IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

No. 14-3030

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEVEN M. HOHN,

Defendant-Appellant.

Appeal from the United States District Court
District of Kansas
District Court No. 12-CR-20003-03

The Honorable Carlos Murguia,
United States District Judge

Oral Argument Requested

BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION AND
THE ACLU FOUNDATION OF KANSAS AS *AMICI CURIAE*
IN SUPPORT OF APPELLANT

STEPHEN DOUGLAS BONNEY,
  KS Bar #12322
ACLU Foundation of Kansas
3601 Main Street
Kansas City, MO 64111
Tel.: (816) 994-3113
Fax: (816) 756-0136
dbonney@aclukansas.org

NATHAN FREED WESSLER
BRIAN HAUSS
BEN WIZNER
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
Fax: (212) 549-2654
nwessler@aclu.org

## <u>CORPORATE DISCLOSURE STATEMENT</u>

No *amici* have parent corporations or are publicly held corporations.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

STATEMENT OF *AMICI CURIAE* ............................................................................ 1

SUMMARY OF ARGUMENT ...................................................................................... 2

ARGUMENT .................................................................................................................. 3

    I.    There Are Compelling Reasons for This Court to Reach the Fourth Amendment Issue. .. 3

    II.   The Warrantless Search of Hohn's Truck Violated the Fourth Amendment ..................... 6

        A.    Warrantless searches are presumptively unreasonable. .................................................. 7

        B.    No exception to the warrant requirement applies. ......................................................... 9

            1.    The automobile exception and its justifications do not apply to location tracking. ................................................................................... 11

            2.    GPS searches by law enforcement do not fall within a "special need." ................ 14

    III.  The Good-Faith Exception to the Exclusionary Rule Does Not Apply Because Law Enforcement Did Not Rely on Binding Appellate Precedent. .......................................... 16

        A.    The district court's application of the good-faith exception conflicts with clear precedent. .................................................................................... 16

        B.    There are few analogous decisions from other circuits, and those on point create a split in authority. ................................................................ 24

        C.    A clear rule is constitutionally superior to a murky one. ............................................ 27

CONCLUSION ............................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Gant*, 556 U.S. 332 (2009) ................................................. 8, 17

*Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) ................................ 28

*Caldwell v. Lewis*, 417 U.S. 583 (1974) ............................................... 11

*California v. Acevedo*, 500 U.S. 565 (1991) .......................................... 11

*California v. Carney*, 471 U.S. 386 (1985) ............................................ 12

*Carroll v. United States*, 267 U.S. 132 (1925) ....................................... 11

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) .................................. 8

*Davis v. United States*, 131 S. Ct. 2419 (2011) ............................... passim

*Ferguson v. City of Charleston*, 532 U.S. 67 (2001) .............................. 14

*Gutter v. E.I. DuPont de Nemours & Co.*, No. 95-2152-CIV-GOLD,
   2001 WL 36086589 (S.D. Fla. Mar. 27, 2001) ................................. 9

*Illinois v. Gates*, 462 U.S. 213 (1983) ................................................... 4

*Illinois v. Krull*, 480 U.S. 340 (1987) .................................................. 22

*Illinois v. Lidster*, 540 U.S. 419 (2004) ................................................. 9

*In re Finley*, 160 B.R. 882 (Bankr. S.D.N.Y. 1993) ................................ 9

*Johnson v. United States*, 333 U.S. 10 (1948) ........................................ 8

*Katz v. United States*, 389 U.S. 347 (1967) ......................................... 8, 9

*Kyllo v. United States*, 533 U.S. 27 (2001) ........................................... 21

*Maryland v. Buie*, 494 U.S. 325 (1990) ................................................ 15

*Mincey v. Arizona*, 437 U.S. 385 (1978) ............................................... 12

*Murray v. United States*, 487 U.S. 533 (1988) ........................................ 6

*New Jersey v. T.L.O.*, 469 U.S. 325 (1985) ........................................................ 14

*New York v. Belton*, 453 U.S. 454 (1981) ........................................................... 17

*O'Connor v. Donaldson*, 422 U.S. 563 (1975) ....................................................... 4

*O'Connor v. Ortega*, 480 U.S. 709 (1987) ......................................................... 14

*Riley v. California*, Nos. 13-132, 13-212,
    2014 WL 2864483 (U.S. June 25, 2014) .................................................. 7, 10, 13

*Roe v. Anderson*, 134 F.3d 1400 (9th Cir. 1998) ................................................... 9

*Roska ex rel. Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003) ................................. 8

*Samson v. California*, 547 U.S. 843 (2006) ........................................................ 15

*Terry v. Ohio*, 392 U.S. 1 (1968) ................................................................. 15

*Thornton v. United States*, 541 U.S. 615 (2004) .................................................. 27

*United States v. Aguiar*, 737 F.3d 251 (2d Cir. 2013) ............................................ 26

*United States v. Andres*, 703 F.3d 828 (5th Cir. 2013) ........................................... 27

*United States v. Barraza-Maldonado*, 732 F.3d 865 (8th Cir. 2013) ................................ 27

*United States v. Brown*, 744 F.3d 474 (7th Cir. 2014) ............................................ 26

*United States v. Chadwick*, 433 U.S. 1 (1977) ..................................................... 8

*United States v. Davis*, 598 F.3d 1259 (11th Cir. 2010), *aff'd* 131 S. Ct. 2419 (2011) ......... 18

*United States v. Davis*, No. 12-12928, __ F.3d __,
    2014 WL 2599917 (11th Cir. June 11, 2014) .............................................. 6

*United States v. Esquivel-Rios*, 725 F.3d 1231(10th Cir. 2013) ................................... 5

*United States v. Fisher*, 745 F.3d 200 (6th Cir. 2014) ........................................... 27

*United States v. Ford*, No. 1:11-CR-42, 2012 WL 5366049 (E.D. Tenn. Oct. 30, 2012) ............. 6

*United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007) ........................................... 19

*United States v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996) ......................................... 17

*United States v. Johnson*, 457 U.S. 537 (1982) ...................................................... 18, 23

*United States v. Jones*, 132 S. Ct. 945 (2012) ........................................................ passim

*United States v. Karo*, 468 U.S. 705 (1984) .......................................................... 20, 21

*United States v. Katzin*, 732 F.3d 187 (3d Cir. 2013), *vacated pending en banc reh'g*, No. 12-2548 (3d Cir. Dec. 12, 2013) ........................................................................ passim

*United States v. Knights*, 534 U.S. 112 (2001) ............................................................ 15

*United States v. Knotts,* 460 U.S. 276 (1983) ............................................................... 21

*United States v. Leon*, 468 U.S. 897 (1984) .................................................... 5, 22, 23, 24

*United States v. Madden*, 682 F.3d 920 (10th Cir. 2012) ........................................ 5, 19

*United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010) ............................................ 19

*United States v. Martin*, 712 F.3d 1080 (7th Cir. 2013) ............................................. 25

*United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010) ............................... 10, 13, 19

*United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009) ..................................... 19, 20

*United States v. Ortiz*, 878 F. Supp. 2d 515 (E.D. Pa. 2012) ...................................... 11

*United States v. Otero*, 563 F.3d 1127 (10th Cir. 2009) ............................................... 5

*United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010) ................................ 19

*United States v. Pineda–Moreno*, 688 F.3d 1087 (9th Cir. 2012) ................................ 27

*United States v. Place*, 462 U.S. 696 (1983) ............................................................... 15

*United States v. Ransfer*, 749 F.3d 914 (11th Cir. 2014) ............................................ 26

*United States v. Richard*, No. 2:09-cr-00992-PMD-1 (D.S.C. Apr. 12, 2012), *aff'd* 528 F. App'x 323 (4th Cir. 2013) ............................................................................ 27

*United States v. Robinson*, 903 F. Supp. 2d 766 (E.D. Mo. 2012) ......................... 21, 28

*United States v. Ross*, 456 U.S. 798 (1982) ............................................................ 11, 14

*United States v. Soza*, 643 F.3d 1289 (10th Cir. 2011) ............................................... 19

*United States v. Sparks*, 711 F.3d 58 (1st Cir. 2013)..................................................... 26

*United States v. Ventura*, No. 10-0770, 2013 WL 1455278 (D. Md. Apr. 8, 2013)..................... 27

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010) ................................................. 5

**Constitution And Statutes**

U.S. Const. amend. IV ....................................................................................................... 7

**Rules**

3d Cir. I.O.P. 9.5.9 ........................................................................................................... 9

## STATEMENT OF *AMICI CURIAE*

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with over 500,000 members dedicated to defending the principles embodied in the Constitution and our nation's civil rights laws. The ACLU Foundation of Kansas is one of the organization's state affiliates. Since its founding in 1920, the ACLU has appeared before the federal courts on numerous occasions, both as direct counsel and as *amicus curiae*. The protection of privacy as guaranteed by the Fourth Amendment is of special concern to the organization. The ACLU has filed *amicus* briefs in a number of location tracking cases, including in *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945 (2012), the decision that is at the core of the issues raised in this case.

Pursuant to Federal Rule of Appellate Procedure 29(c)(5), *amici* state that no party's counsel authored this brief in whole or in part, and that no party or person other than *amici* and their members contributed money towards the preparation or filing of this brief.

## AUTHORITY TO FILE *AMICUS* BRIEF

On June 30, 2014, this Court granted *amici*'s Motion for Leave to File Amicus Brief Later than Normal Deadline.

## SUMMARY OF ARGUMENT

This appeal raises the question whether law enforcement agents may attach a GPS device to a vehicle to track its movements for four months—conduct that the Supreme Court unanimously held constitutes a Fourth Amendment search in *United States v. Jones*, 132 S. Ct. 945 (2012)—without first obtaining a warrant based on probable cause. Warrantless searches are presumptively unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. Because none of the recognized exceptions to the warrant requirement applies to GPS tracking, this Court should hold that Hohn's Fourth Amendment rights were violated.

The district court sidestepped this critical question by holding that even if probable cause warrants are required for GPS tracking, Hohn's suppression motion should be denied because the law enforcement agents who installed and monitored the GPS device were acting in "good faith." The district court's application of the good-faith exception to the exclusionary rule was error. Both this Court and the Supreme Court have made clear that to avoid suppression, law enforcement officers must have relied on binding appellate precedent. No such precedent existed here when the search at issue occurred. Instead, the district court looked to out-of-circuit authority and inapposite Supreme Court cases. The rule adopted by the district court erodes the privacy protections of the Fourth Amendment and

requires vexing and standardless post hoc judicial determinations. A bright-line rule that waives the exclusionary rule only when police rely on binding precedent is not only doctrinally required, but practically beneficial to both law enforcement and the courts.

But even if this Court were to adopt the district court's erroneous expansion of the good-faith exception, it should still decide the Fourth Amendment question in order to provide much-needed guidance to law enforcement and citizens in the Tenth Circuit.

## ARGUMENT

### I.    There Are Compelling Reasons for This Court to Reach the Fourth Amendment Issue.

In its opposition to Defendant's motion to suppress, the government argued that, even if warrantless attachment and monitoring of a GPS device violates the Fourth Amendment, suppression is not warranted because "[o]fficers had independent sources that supplied them with lawfully obtained locational information for [Hohn's] truck," and because "officers originally attached the GPS device to the vehicle with an objectively reasonable good-faith belief that their conduct was lawful."  Gov't's Resp. to Def's Mot. to Suppress Evidence from Global Positioning System (GPS) Device ("Doc. 164") 4–5, 7, Sept. 11, 2012, ECF No. 164. This Court should decide whether a GPS search requires a probable cause warrant irrespective of whether it applies the independent source doctrine or the

3

good-faith exception to the exclusionary rule under *Davis v. United States*, 131 S.

Ct. 2419 (2011). *See also infra* Part III (arguing that good-faith exception does not

apply in this case).

When a case presents a "novel question of law whose resolution is necessary

to guide future action by law enforcement officers and magistrates, there is

sufficient reason for the Court to decide the violation issue *before* turning to the

good-faith question." *Illinois v. Gates*, 462 U.S. 213, 264, 265 n.18 (1983) (White,

J., concurring) (citing *O'Connor v. Donaldson*, 422 U.S. 563 (1975)). This is just

such a case. GPS devices have become a favored tool of law enforcement, and

their highly intrusive nature cries out for clear judicial regulation. Law

enforcement and prosecutors in this circuit are currently operating in a vacuum,

without guidance from this Court on whether they must obtain a warrant before

attaching a GPS device to a vehicle and monitoring it. The Supreme Court in *Jones*

was unable to rule on the applicability of the warrant requirement to GPS searches

because the government had forfeited its position on the issue. 132 S. Ct. at 954.

The issue is now before this Court. Addressing it would yield much needed clarity

in this Circuit.

In *United States v. Warshak*, the Sixth Circuit explained the value of

addressing important Fourth Amendment issues even when the good-faith

exception will ultimately apply:

Though we may surely do so, we decline to limit our inquiry to the issue of good-faith reliance. If every court confronted with a novel Fourth Amendment question were to skip directly to good faith, the government would be given *carte blanche* to violate constitutionally protected privacy rights, provided, of course, that a statute supposedly permits them to do so. The doctrine of good-faith reliance should not be a perpetual shield against the consequences of constitutional violations. In other words, if the exclusionary rule is to have any bite, courts must, from time to time, decide whether statutorily sanctioned conduct oversteps constitutional boundaries.

631 F.3d 266, 282 n.13 (6th Cir. 2010) (citations omitted).

The Sixth Circuit's logic is not novel. *See, e.g., United States v. Esquivel-Rios*, 725 F.3d 1231, 1239 (10th Cir. 2013) (encouraging district court on remand to address both the existence of a constitutional violation and the applicability of the good-faith exception). Courts frequently decide whether there has been a Fourth Amendment violation before applying the good-faith exception. For example, this Court recently analyzed whether an officer's search of a defendant's vehicle violated the Fourth Amendment pursuant to *Arizona v. Gant*, 556 U.S. 332 (2009), and only then applied the good faith exception to the exclusionary rule. *United States v. Madden*, 682 F.3d 920, 926 (10th Cir. 2012); *see also United States v. Otero*, 563 F.3d 1127, 1131–36 (10th Cir. 2009) (holding that warrant authorizing a computer search lacked particularity in violation of the Fourth Amendment, and then applying the good-faith exception under *United States v. Leon*, 468 U.S. 897 (1984)). Likewise, courts may opt to determine whether there has been a Fourth Amendment violation before performing an independent source

analysis and invoking that doctrine. *See, e.g.*, *Murray v. United States*, 487 U.S. 533, 541 (1988); *cf. United States v. Souza*, 223 F.3d 1197, 1202–06 (10th Cir. 2000) (assessing Fourth Amendment violation before applying inevitable discovery doctrine). This approach is no less appropriate in the location-tracking context. *See United States v. Davis*, No. 12-12928, __ F.3d __, 2014 WL 2599917, at *3–11 (11th Cir. June 11, 2014) (holding that warrantless acquisition of cell site location information violates the Fourth Amendment, and then applying the good-faith exception under *Leon*); *United States v. Ford*, No. 1:11-CR-42, 2012 WL 5366049, at *7–11 (E.D. Tenn. Oct. 30, 2012) (determining that warrantless GPS tracking violates the Fourth Amendment, and then applying the good-faith exception).

The logic of these cases applies here with special force, because if the court declines to decide the constitutional question that this case squarely raises, law enforcement will not know whether to seek warrants, judicial resources will be needlessly taxed in future cases, and future convictions may be placed in doubt.

## II.    The Warrantless Search of Hohn's Truck Violated the Fourth Amendment.

In *United States v. Jones*, the Supreme Court held that the physical attachment of a GPS tracking device to a vehicle constitutes a search within the meaning of the Fourth Amendment. Following that decision, it is undisputed that the installation and monitoring of the GPS tracker on Hohn's truck was a Fourth

Amendment search. *See* 132 S. Ct. at 949. Because that search was conducted

without a warrant, it was presumptively unreasonable, *see Riley v. California*, Nos.

13-132, 13-212, 2014 WL 2864483, at *6 (U.S. June 25, 2014), and this Court

should therefore hold that the government violated Hohn's Fourth Amendment

rights.[1] No exception to the warrant requirement applies in this case. The

"automobile exception" does not extend to surveillance that reveals someone's

movements over a prolonged period. And other exceptions to the warrant

requirement, such as those based on identification of "special needs" beyond the

government's interest in law enforcement or reduced expectations of privacy, are

inapposite here.

### A. Warrantless searches are presumptively unreasonable.

The Fourth Amendment protects against "unreasonable searches and

seizures." U.S. Const. amend. IV. "[E]very case addressing the reasonableness of a

warrantless search [should begin] with the basic rule that 'searches conducted

outside the judicial process, without prior approval by judge or magistrate, are *per*

*se* unreasonable under the Fourth Amendment—subject only to a few specifically

established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338

---

[1] In ruling on Hohn's motion to suppress at the conclusion of the suppression
hearing, the district court stated only that "[u]nder Jones, it appears to the court
that it was a warrantless search with no apparent exigent circumstances which
would at least arguably make it unreasonable." (Vol. II, doc. 511 at 66). The court
then proceeded to discuss the good faith exception to the exclusionary rule.

(2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *Roska ex rel.*

*Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003) (same).

Warrants are presumptively required because they "provide[] the detached

scrutiny of a neutral magistrate, which is a more reliable safeguard against

improper searches than the hurried judgment of a law enforcement officer

'engaged in the often competitive enterprise of ferreting out crime.'" *United States*

*v. Chadwick*, 433 U.S. 1, 9 (1977) (quoting *Johnson v. United States*, 333 U.S. 10,

14 (1948)). The process of obtaining a warrant serves a crucial function in and of

itself: It prevents the government from conducting searches solely at its discretion.

*See Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971). "[Warrants are] not an

inconvenience to be somehow 'weighed' against the claims of police efficiency."

*Id.*

The warrant requirement's safeguard is particularly important in the context

of GPS tracking, which "is cheap in comparison to conventional surveillance

techniques and, by design, proceeds surreptitiously." *Jones*, 132 S. Ct. at 956

(Sotomayor, J., concurring); *see also id.* at 963–64 (Alito, J., concurring in the

judgment) (noting difficulty and expense of continuous, extended tracking for

traditional law enforcement). Thus, if GPS tracking is not subject to a warrant

requirement, it can "evade[] the ordinary checks that constrain abusive law

enforcement practices: 'limited police resources and community hostility.'" *Id.* at

8

956 (Sotomayor, J., concurring) (quoting *Illinois v. Lidster*, 540 U.S. 419, 426 (2004).

**B. No exception to the warrant requirement applies.**

Warrantless searches are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357. Because none of those exceptions apply here, the government violated Hohn's constitutional rights by not securing a probable cause warrant before attaching a GPS tracker to his vehicle. *See United States v. Katzin*, 732 F.3d 187, 197–205 (3d Cir. 2013), *vacated pending en banc reh'g*, No. 12-2548 (3d Cir. Dec. 12, 2013).[2] Before the district court, the government advanced the dubious proposition that a warrant was not required, because location tracking is minimally intrusive. It

---

[2] Pursuant to its internal operating procedures, when the Third Circuit grants a petition for rehearing en banc, it vacates the panel opinion as a matter of course. 3d Cir. I.O.P. 9.5.9. Nonetheless, this Court may look to the *Katzin* panel opinion as persuasive authority. *See Roe v. Anderson*, 134 F.3d 1400, 1404 (9th Cir. 1998); *Gutter v. E.I. DuPont de Nemours & Co.*, No. 95-2152-CIV-GOLD, 2001 WL 36086589, at *6 (S.D. Fla. Mar. 27, 2001) ("[A] logical and well-reasoned decision, despite vacatur, is always persuasive authority, regardless of its district of origin or its ability to bind." (quoting *In re Finley*, 160 B.R. 882, 898 (Bankr. S.D.N.Y. 1993))). The *Katzin* panel unanimously held that warrantless attachment and use of a GPS tracker violates the Fourth Amendment. *Katzin*, 732 F.3d at 197–205; *see also id.* at 217 (Van Antwerpen, J, concurring in part and dissenting in part). The government did not challenge this holding in its petition for rehearing en banc, where it sought review only of the panel's divided opinion on applicability of the good faith exception to the exclusionary rule. Appellant's Petition for Rehearing En Banc at 2 n.1, *Katzin*, No. 12-2548 (3d Cir. Dec. 4, 2013). The en banc court limited argument on rehearing "exclusively [to] the applicability of the good faith exception." Letter from Marcia M. Waldron, Clerk, to Counsel, *Katzin*, No. 12-2548 (3d Cir. May 22, 2014) (filed on ECF).

advanced the same argument, unsuccessfully, in *Jones*. To the contrary, "'GPS
monitoring generates a precise, comprehensive record of a person's public
movements that reflects a wealth of detail about her familial, political,
professional, religious, and sexual associations.'" *Riley*, 2014 WL 2864483, at *15,
(quoting *Jones*, 132 S. Ct. at 955 (Sotomayor, J., concurring)); *see also Jones*, 132
S. Ct. at 964 (Alito, J., concurring in the judgment) ("[S]ociety's expectation has
been that law enforcement agents and others would not—and indeed, in the main,
simply could not—secretly monitor and catalogue every single movement of an
individual's car for a very long period."); *United States v. Maynard*, 615 F.3d 544,
562 (D.C. Cir. 2010) ("A person who knows all of another's travels can deduce
whether he is a weekly church goer, a heavy drinker, a regular at the gym, an
unfaithful husband, an outpatient receiving medical treatment, an associate of
particular individuals or political groups—and not just one such fact about a
person, but all such facts."), *aff'd sub nom Jones*, 132 S. Ct. 945. When the
government seeks such intimate information about an individual in the course of a
criminal investigation, it should be required to obtain advance approval from a
neutral magistrate.  Because it did not do so here, the warrantless search and
resulting seizure are presumptively unreasonable and unconstitutional.

### 1. The automobile exception and its justifications do not apply to location tracking.

The automobile exception allows law enforcement officers to conduct warrantless searches and seizures of any area of a car that they have probable cause to believe contains contraband or evidence of criminal activity. *See California v. Acevedo*, 500 U.S. 565, 579–80 (1991). The government suggested below that the exception applies in this case, (Doc. 164 at 6–7), but neither of the two justifications for the automobile exception recognized by the Supreme Court has any bearing here.

Under one rationale, the Supreme Court has allowed warrantless searches of automobiles because of "the exigent circumstances that exist in connection with movable vehicles." *Caldwell v. Lewis*, 417 U.S. 583, 590 (1974). "This [concern] is strikingly true where the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove evidence from official grasp is heightened." *Id.*; *see also Carroll v. United States*, 267 U.S. 132 (1925). The exception is thus premised on the belief that "'an immediate intrusion is necessary if police officers are to secure the illicit substance.'" *United States v. Ortiz*, 878 F. Supp. 2d 515, 535 (E.D. Pa. 2012) (quoting *United States v. Ross*, 456 U.S. 798, 806–07 (1982)). Put otherwise: The automobile exception was established to prevent contraband and physical evidence of a crime from absconding.

11

Attachment and use of a GPS device provides information about the location of a car, not its contents. But a car's location is neither contraband nor evidence that is at risk of disappearing. Indeed, GPS tracking is facilitated, not thwarted, by vehicles' mobility. To be sure, in cases of actual exigency—for example, where police have good reason to believe that the vehicle will disappear before a warrant can be obtained—no warrant may be required for the initial attachment of a GPS device. *See, e.g.*, *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978) (holding that a warrantless search is permissible where "the exigencies of the situation" make the search "objectively reasonable"). Even then, however, no exigency would prevent law enforcement officials from promptly applying for a warrant to continue GPS tracking after the device is installed. And as the district court recognized, there was no exigency justifying law enforcement's warrantless attachment of the GPS device here. (Vol. II, doc. 511 at 66; *see also id.* at 51–52).

The Supreme Court's second rationale justifying warrantless searches of motor vehicles—reduced expectations of privacy—is equally inapplicable to GPS searches. The Court has explained that people have reduced expectations of privacy in their cars because of "pervasive regulation of vehicles capable of traveling on the public highways." *California v. Carney*, 471 U.S. 386, 392 (1985). But GPS searches do not intrude upon expectations of privacy about cars; they intrude upon expectations of privacy about drivers' and passengers' locations over

time.[3] *Maynard*, 615 F.3d at 561–62; *see also Jones*, 132 S. Ct. at 955 (Sotomayor, J., concurring). At least five Justices believe that technologically advanced tracking of a person's location can in fact violate reasonable expectations of privacy. *See Jones*, 132 S. Ct. at 957, 964 (Alito, J., concurring in the judgment) ("[L]onger term GPS monitoring in investigations of most offenses impinges on expectations of privacy."); *id.* at 955 (Sotomayor, J., concurring); *see also Riley*, 2014 WL 2864483, at *15 (citing *Jones*, 132 S. Ct. at 955 (Sotomayor, J., concurring)). Moreover, *Jones* held that attachment and monitoring of a GPS tracker constitutes a search because it is trespassory. *Jones*, 132 S. Ct. at 949. Under this view, it is irrelevant that vehicles are pervasively regulated; the physical trespass that constitutes the search also triggers the warrant requirement. Here, there was not just one trespass, but at least nine. (Vol. II, doc. 517 at 701). The government committed a new trespass on Hohn's vehicle every time it removed the GPS tracker, replaced its batteries, and reattached it to the truck. *Id.* A warrant was therefore required.

The automobile exception would have permitted police to enter Hohn's car to recover "evidence already present" in it. "It would not (and, indeed, did not) permit them to leave behind an ever-watchful electronic sentinel in order to collect

---

[3] *See, e.g.*, Vol. II, doc. 516 at 496–97; Vol. II, doc. 519 at 1196–98 (Deputy Williams's testimony detailing Hohn's movements over the course of multiple days based on GPS tracking data).

future evidence. . . . [T]o hold otherwise . . . would unduly expand the scope of the automobile exception well past its 'specifically established and well delineated' contours . . . ." *Katzin*, 732 F.3d at 204 (quoting *Ross*, 456 U.S. at 824).

**2. GPS searches by law enforcement do not fall within a "special need."**

The Supreme Court has recognized that certain searches outside the scope of traditional law enforcement, or aimed at categories of people under circumstances where they enjoy reduced expectations of privacy, may not require probable cause warrants. A review of these exceptions and their underlying justifications makes plain that they are inapplicable to GPS tracking of the sort at issue here.

Exemption from the warrant requirement under the special needs exception is justified "'[o]nly in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *O'Connor v. Ortega*, 480 U.S. 709, 720 (1987) (plurality opinion) (alteration in original) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in the judgment)); *see also Ferguson v. City of Charleston*, 532 U.S. 67, 74 & n.7 (2001). GPS searches by law enforcement for the purpose of investigating criminal suspects, as occurred here, cannot be justified under this rationale.

Warrantless GPS tracking is also not justifiable on the ground that the subjects of the searches have reduced expectations of privacy. The Supreme Court

has upheld warrantless searches of parolees and probationers on a "reasonable suspicion" standard because, inter alia, those individuals remain subject to state controls. *See Samson v. California*, 547 U.S. 843, 850 (2006) (parolees); *United States v. Knights*, 534 U.S. 112, 119–21 (2001) (probationers). Those and similar precedents cannot provide a categorical exemption from the warrant requirement for GPS tracking of ordinary criminal suspects. *See Katzin*, 732 F.3d at 199–200.

The government argued below that the warrant and probable cause requirements should be waived because the intrusion caused by installation and tracking of a GPS device is "minimal." (Doc. 164 at 6). But that is not so, and cases justifying warrantless temporary stops for brief on-the-spot investigations upon articulable suspicion of contemporaneous criminal activity and protective frisks for officer safety do not apply to prolonged GPS tracking, or to the physical attachment of a sophisticated, constantly running surveillance device. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968); *see also Maryland v. Buie*, 494 U.S. 325, 334–36 (1990); *United States v. Place*, 462 U.S. 696, 706 (1983). These cases are distinguishable from GPS searches, both because there is no "officer safety" rationale for GPS tracking and because such tracking is significantly more invasive of the target's reasonable expectation of privacy than the minimal intrusions identified in *Terry* and its progeny. *See, e.g.*, *Katzin*, 732 F.3d at 200 ("A GPS search, in contrast [to a *Terry* frisk], is an ongoing, vastly broader endeavor.").

15

In short, GPS searches of the kind at issue here are wholly unrelated to any of the special needs rationales recognized by the Supreme Court. Their purpose is to arrest and convict criminals, not to deter dangerous conduct. And they are directed not at discrete groups with reduced privacy expectations, but at any person suspected of a crime—the very class the First Congress and the People sought to protect by adopting the Fourth Amendment.

In this case, the government used a GPS device to follow Hohn's every movement in his vehicle over the course of four months. The Supreme Court has already held that such surveillance constitutes a search. No existing exception to the warrant requirement applies, and none can or should be created to cover GPS tracking.

### III. The Good-Faith Exception to the Exclusionary Rule Does Not Apply Because Law Enforcement Did Not Rely on Binding Appellate Precedent.

#### A. The district court's application of the good-faith exception conflicts with clear precedent.

The good-faith exception to the exclusionary rule delineated in *Davis v. United States*, 131 S. Ct. 2419 (2011), does not apply to the unconstitutionally obtained GPS evidence in this case. *Davis* is the latest in a line of cases that has examined whether the exclusionary rule applies when police rely in objective good faith on binding legal authority. After carefully considering the costs and benefits of exclusion, the Supreme Court determined that the exclusionary rule does not

16

apply to "searches conducted in objectively reasonable reliance on binding appellate precedent." *Id.* at 2423–24. The government advocates for a broader exception—one that would permit reliance on any body of persuasive, unsettled law, or on inapposite cases addressing outdated technologies. (Doc. 164 at 8–9). This unjustified reading would subvert *Davis*'s clear holding, exceed the bounds of the exclusionary rule, and prove unworkable in practice.

In *Davis*, while the defendant's appeal was pending, the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332, which announced a new rule governing automobile searches incident to arrest. *Gant* expressly narrowed *New York v. Belton*, 453 U.S. 454 (1981), and thus overruled the Eleventh Circuit decision in *United States v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996), which relied on a broad reading of *Belton* in authorizing warrantless automobile searches even after the defendants were secured. *See Gant*, 556 U.S. at 348. Davis conceded on appeal that the police had "fully complied with existing Eleventh Circuit precedent," namely *Gonzalez. Davis*, 131 S. Ct. at 2426 (internal quotation marks omitted). The Court held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Id.* at 2423–24.

Ignoring *Davis*'s clear rule, the district court incorrectly held that the good faith exception applies even in the absence of binding precedent. (Vol. II, doc. 511

at 66–68). *Davis* is simply inapplicable where there was no binding circuit

precedent authorizing a search at the time it occurred. Justice Alito's opinion for

the Court refers to "binding" authority at numerous points, *see Davis*, 131 S. Ct. at

2423, 2428, 2432, 2434, does not mention any source of law more permissive than

"binding appellate precedent," and even implies a different result for "defendants

in jurisdictions in which the question remains open." *Id.* at 2433; *see also id.* at

2435 (Sotomayor, J., concurring in the judgment) (clarifying that the "markedly

different question" of whether the exclusionary rule applies when the law relied

upon was unsettled was not before the Court). Further confirming the clarity of

*Davis*'s rule is the reasoning of the Eleventh Circuit panel, whose decision the

Supreme Court affirmed:

> We stress, however, that our precedent on a given point must be
> unequivocal before we will suspend the exclusionary rule's operation.
> We have not forgotten the importance of the "incentive to err on the
> side of constitutional behavior," and we do not mean to encourage
> police to adopt a "let's-wait-until-it's-decided approach" to
> "unsettled" questions of Fourth Amendment law.

*United States v. Davis*, 598 F.3d 1259, 1266–67 (11th Cir. 2010) (quoting *United

States v. Johnson*, 457 U.S. 537, 561 (1982)), *aff'd* 131 S. Ct. 2419 (2011).

This Court has explained that *Davis* means what it says: "The good-faith

exception to the exclusionary rule applies when a search is objectively reasonable

under the binding, settled case law of a United States Court of Appeals." *United*

*States v. Madden*, 682 F.3d 920, 926 (10th Cir. 2012). In other words, the good-faith exception applies when a search complied with "then-existing, well-settled law of *this* court." *Id.* at 927 (emphasis added); *accord United States v. Soza*, 643 F.3d 1289, 1291 (10th Cir. 2011) (*Davis* good-faith exception applies when a search "was permissible under binding circuit precedent at the time it occurred"). This rule is nothing new in this Circuit, as *Davis* is consistent with this Court's earlier precedent in *United States v. McCane*, 573 F.3d 1037, 1045 & n.6 (10th Cir. 2009), which held that the good-faith exception applies where "the Tenth Circuit jurisprudence supporting the search was settled" at the time of the search. *See Soza*, 643 F.3d at 1291 (explaining that *Davis* is "consistent with *McCane*").

It is irrelevant to the *Davis* analysis that, at the time agents attached the GPS device to Hohn's vehicle, two courts of appeals had held that warrantless attachment of GPS devices did not constitute a search. *See United States v. Pineda-Moreno*, 591 F.3d 1212, 1216–17 (9th Cir. 2010); *United States v. Garcia*, 474 F.3d 994, 997–98 (7th Cir. 2007).[4] For one, the circuits were split at the time of the search, with the D.C. Circuit holding that longer-term GPS tracking constitutes a search and requires a warrant. *Maynard*, 615 F.3d at 555–68. This should have put

---

[4] The government also cited *United States v. Marquez*, 605 F.3d 604, 609–10 (8th Cir. 2010), in its brief below. (Doc. 164 at 9). But *Marquez*'s discussion of warrantless GPS tracking is dicta, as the court rested its affirmance of the district court's denial of the suppression motion on standing grounds. *Marquez*, 605 F.3d at 609; *see also Katzin*, 732 F.3d at 196, 201 n.9 (characterizing *Marquez*'s Fourth Amendment merits analysis as dicta).

the government on notice that the law in this area was far from "settled." But more importantly, "extending the rationale from *Davis* to cover reliance on out-of-circuit precedent would turn [*Davis*] on its head." *Katzin*, 732 F.3d at 208. As this Court has explained, relying on the opinions of other circuits would force "law enforcement officers [to] engage in the type of complex legal research and analysis better left to the judiciary and members of the bar." *McCane*, 573 F.3d at 1045 n.6; *see also Katzin*, 732 F.3d at 208–09 (Relying on out-of-circuit cases "would eviscerate the notion that clear and well-settled precedent should control" and would "burden district courts" with an amorphous and standardless case-by-case assessment of "how many circuits had addressed the police practice in question, what each one had said, whether the statements were mere dicta, and myriad other factors."). This critique is particularly compelling where, as here, only a small minority of circuits had spoken. Because *Davis* only excuses objective good faith reliance on binding appellate precedent, the government's call for an extension to merely persuasive authority is unavailing. *See McCane*, 573 F.3d at 1045 n.6.

The risks to privacy inherent in rapid technological change also show the prudence of refusing to extend *Davis*'s good faith exception. In its briefing below, the government cited two cases involving decades-old technology in support of its argument that warrantless GPS tracking is constitutionally reasonable: *United States v. Karo*, 468 U.S. 705 (1984) (upholding the conveyance by police of a

20

beeper, which transmitted no information, to the suspect); and *United States v. Knotts,* 460 U.S. 276 (1983) (approving following a suspect's car, with the help of a beeper that could perform no independent tracking and that required close distance to operate). Accepting the argument that these cases authorized GPS tracking—a technology not yet in existence when they were decided—would both contradict the Supreme Court's views on changing technology and undermine the purpose of the good faith exception. In these cases and elsewhere, the Court has recognized that Fourth Amendment holdings authorizing certain technological tools should not be unduly extended. *See Kyllo v. United States*, 533 U.S. 27, 33 (2001) ("We have previously reserved judgment as to how much technological enhancement of ordinary perception . . . is too much."); *Knotts*, 460 U.S. at 283-84. Moreover, there is a special danger in recognizing good faith reliance on precedents as old as *Karo* and *Knotts*, when they are based on then-existing technological considerations. The integrity of the constitutional process that balances privacy and rapidly advancing technology via careful deliberation would be lost if such factually distant precedent could satisfy the good-faith requirement. *See, e.g.*, *United States v. Robinson*, 903 F. Supp. 2d 766, 785 (E.D. Mo. 2012) ("The need for caution in this age of developing technology should be clear. . . . [O]ne may not simply assume that prior case law authorizes conduct when it deals

with different technology, is perhaps installed in a different fashion, or permits a different degree of intrusion.").

Moreover, as all of the Justices agreed in *United States v. Jones*, it was not necessary for the Court to overrule either *Knotts* or *Karo* to conclude that attaching a GPS device to a car and monitoring the car's movements for 28 days was a search. *Jones*, 132 S. Ct. at 951–52; *id.* at 964 (Alito, J., concurring in the judgment). The beepers in *Knotts* and *Karo* were not installed pursuant to a physical trespass, were not used for long-duration tracking, and provided only limited, imprecise information. Given that the surveillance the officers carried out here is indistinguishable from that which took place in *Jones*, and *Jones* expressly did not overrule *Knotts* or *Karo*, those cases do not constitute binding precedent authorizing the agents' conduct here.

The line of exclusionary rule cases leading to *Davis* supports the conclusion that the good-faith exception does not apply. *Davis* grew out of two other good-faith exception cases. *See Illinois v. Krull*, 480 U.S. 340, 349–50 (1987) (exempting searches conducted in reliance on later overturned statutes); *United States v. Leon*, 468 U.S. 897 (1984) (doing the same for later invalidated warrants). These cases share a common element that the government's interpretation of *Davis* cannot sustain: All involve sources of law that "specifically *authorize[]* a particular police practice." *Davis*, 131 S. Ct. at 2429. No Supreme Court or Tenth Circuit

case specifically authorized the warrantless installation and monitoring of GPS trackers at the time of the search at issue; the exclusionary rule must apply to the evidence that this search produced. The Fourth Amendment error here lies not with an authoritative third party—a magistrate, legislature, or appellate court with direct authority—but rather with law enforcement officers who gambled on their choice not to seek a warrant to conduct an invasive search. *See id.* at 2428. The district court's conclusion to the contrary was in error.

The rule that *Davis* set forth promotes clear, system-wide knowledge of what is permissible and what is not, eliminating the constitutional violations that result from erroneous guesswork. Suppressing the evidence in this case will result in "'appreciable deterrence'" of unconstitutional searches, thus serving the central goal of the good faith exception cases. *Leon*, 468 U.S. at 909. Suppression would prevent investigators and the prosecutors who advise them—quintessential "adjuncts to the law enforcement team," *id.* at 917—from engaging in overly aggressive readings of non-binding authority. The Supreme Court has stated that executive officers should "err on the side of constitutional behavior." *Johnson*, 457 U.S. at 561. It has even recommended a specific course of action: in "a doubtful or marginal case," law enforcement agents should obtain a warrant because a warrant "provides the detached scrutiny of a neutral magistrate, which is a more reliable

safeguard against improper searches" than the judgment of law enforcement officers. *Leon*, 468 U.S. at 913–14 (internal quotation marks and citations omitted).

These principles are particularly important where, as here, law enforcement agents deploy a novel, surreptitious surveillance technology. This exercise of executive power is perhaps uniquely capable of evading public, legislative, and judicial scrutiny. Innocent people have no mechanism to learn that they have been subjected to such surveillance, and even criminal defendants usually learn that they have been targeted only if the government makes the discretionary decision to use evidence derived in this manner in its case-in-chief. Suppression of the unconstitutionally acquired GPS evidence will deter future violations by law enforcement and is the proper outcome in this case.

**B. There are few analogous decisions from other circuits, and those on point create a split in authority.**

While a number of circuits have weighed in on application of the exclusionary rule to GPS evidence collected prior to *Jones*, virtually none of their decisions are on point. Most fall within *Davis* if it is properly construed, because in-circuit precedent had specifically authorized the government's conduct. That leaves just a few similar cases agreeing with the government's position, but those decisions are flawed because they wrongly believed that *Knotts* and/or *Karo* constituted binding appellate precedent.

The Third Circuit panel's reasoning in *Katzin* supports the conclusion that *Knotts* and *Karo* cannot constitute binding appellate precedent justifying warrantless GPS searches:  "[W]e find that the explicit holding from *Davis* is inapposite because *Knotts* and *Karo* are both distinguishable given (1) the lack of a physical intrusion in those cases, (2) the placement by police of the beepers inside containers, and (3) the marked technological differences between beepers and GPS trackers." *Katzin*, 732 F.3d at 206. Further, reliance on out-of-circuit cases "would strain [*Davis*'s] reasoning, to say nothing of its holding" and "would eviscerate the notion that clear and well-settled precedent should control." *Id.* at 208.

A panel of the Seventh Circuit has reached the same conclusion. In *United States v. Martin*, 712 F.3d 1080, 1082 (7th Cir. 2013) (per curiam), the court did not "definitely resolve" the question, but described the government's interpretation of the good-faith exception as "an unwarranted expansion of the Supreme Court's decision in *Davis*":

> The Supreme Court may decide to expand *Davis* in the coming years, but until it does so, we are bound to continue applying the traditional remedy of exclusion when the government seeks to introduce evidence that is the "fruit" of an unconstitutional search. We reject the government's invitation to allow police officers to rely on a diffuse notion of the weight of authority around the country, especially where that amorphous opinion turns out to be incorrect in the Supreme Court's eyes.

*Id.* at 1082. Although another panel of the Seventh Circuit has questioned this conclusion in dicta, it rested its decision denying suppression on the fact that the

GPS tracker "was installed with the consent of the [vehicle's] owner," and therefore was not a search pursuant to aspects of *Knotts* and *Karo* not called into question by *Jones*. *United States v. Brown*, 744 F.3d 474, 478 (7th Cir. 2014). The *Brown* panel remarked that deciding whether the good-faith exception applies in the absence of binding appellate precedent is "a question for another day." *Id.*

To be sure, decisions of the First and Second Circuits part ways with the Third and Seventh Circuits' reasoning to some extent, but they are ultimately unpersuasive. In *United States v. Sparks*, the First Circuit concluded that a combination of the Supreme Court's decision in *Knotts* and one of its own prior decisions were "sufficiently clear and apposite to trigger *Davis*." 711 F.3d 58, 65 (1st Cir. 2013). Because it did not separate out the roles of the two cases, the decision is something of an anomaly and difficult to apply outside of that Circuit. The Second Circuit concluded that only binding in-circuit or Supreme Court precedent triggers the good faith exception under *Davis*. *United States v. Aguiar*, 737 F.3d 251, 261–62 (2d Cir. 2013). However, it wrongly concluded that *Knotts* and *Karo* constituted such precedent. *Id.*

The Fifth, Sixth, Ninth, and Eleventh Circuits applied the good faith exception based on a determination that their own prior case law authorized warrantless GPS tracking, a circumstance not present here. *United States v. Ransfer*, 749 F.3d 914, 924–25 (11th Cir. 2014); *United States v. Fisher*, 745 F.3d

26

200, 204 (6th Cir. 2014); *United States v. Andres*, 703 F.3d 828, 834–35 (5th Cir.

2013); *United States v. Pineda–Moreno*, 688 F.3d 1087, 1090–91 (9th Cir. 2012).

*See also United States v. Barraza-Maldonado*, 732 F.3d 865, 867–68 (8th Cir.

2013) (holding that binding Ninth Circuit precedent authorized installation and use

of GPS tracker within that circuit). Those cases shed no light on the proper

outcome in this case.

In short, the circuit split on application of the exclusionary rule to GPS

tracking in this case is more superficial than it might initially appear.[5] The district

court erred in holding that the GPS tracking evidence should not be suppressed.

### C. A clear rule is constitutionally superior to a murky one.

A clear rule not only deters police misconduct and negligence, it is also far

more practicable for law enforcement and efficient for the courts. The muddled

standard proposed by the government would complicate the work of police and

prosecutors, for whom bright-line rules provide great benefits. *See, e.g., Thornton

v. United States*, 541 U.S. 615, 620–24 (2004) (reasoning that rules requiring ad

hoc determinations by police are impracticable); *Atwater v. City of Lago Vista*, 532

---

[5] Although the Fourth Circuit has not ruled on the proper scope of the *Davis* good-
faith exception, district courts within that circuit have held that, in the absence of
pre-*Jones* binding circuit precedent authorizing warrantless GPS searches, the
good-faith exception to the exclusionary rule does not apply. *See United States v.
Ventura*, No. 10-0770, 2013 WL 1455278, at *21 (D. Md. Apr. 8, 2013); *United
States v. Richard*, No. 2:09-cr-00992-PMD-1, slip op. at 9 (D.S.C. Apr. 12, 2012),
*aff'd* 528 F. App'x 323 (4th Cir. 2013) (per curiam).

U.S. 318, 347 (2001) ("[A] responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations . . . lest every discretionary judgment . . . be converted into an occasion for constitutional review."). The Supreme Court has already drawn this bright line; this Court should decline the government's invitation to muddy it.

For example, *Davis*'s clear rule relieves courts and police of the difficult line drawing problem rooted in the depth and breadth of potentially relevant sources of law available under a standard requiring only a good faith guess at what unsettled law will later become. *See Katzin*, 732 F.3d at 209–10. The systemic risk posed by leaving these questions to retrospective adjudication of good faith unguided by any specific touchstone, such as a warrant, statute, or binding appellate precedent, would "yield[] an unworkable framework," *Robinson*, 903 F. Supp. 2d at 784, and undermine the very foundations of the Fourth Amendment. Consistent with *Davis,* the single source of developing law on which officers should be allowed to rely without risking exclusion is binding appellate precedent.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's decision denying Hohn's motion to suppress.

Dated: July 8, 2014                    Respectfully Submitted,

                                       */s/ Stephen Douglas Bonney*
                                       Stephen Douglas Bonney, KS Bar #12322
                                       ACLU Foundation of Kansas
                                       3601 Main Street
                                       Kansas City, MO 64111
                                       Tel.: (816) 994-3113
                                       Fax: (816) 756-0136
                                       dbonney@aclukansas.org

                                       Nathan Freed Wessler
                                       Brian Hauss
                                       Ben Wizner
                                       American Civil Liberties Union Foundation
                                       125 Broad Street, 18th Floor
                                       New York, NY 10004
                                       Tel: (212) 549-2500
                                       Fax: (212) 549-2654
                                       nwessler@aclu.org

## STATEMENT REGARDING ORAL ARGUMENT

*Amici curiae* submit that oral argument is appropriate in this case because the Fourth Amendment question on appeal is an issue of first impression in this Circuit. *Amici curiae* respectfully seek leave to participate in oral argument on the Fourth Amendment question, because their participation may be helpful to the Court in addressing the novel and important issues presented by this appeal. *See* Fed. R. App. P. 29(g).

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

1. This brief complies with the type-volume limitations of Fed. R. App. P.

   32(a)(7)(B) and Fed. R. App. P. 29(d) because:

   > This brief contains 6,663 words, excluding the parts of the brief exempted

   > by Fed. R. App. P. 32(a)(7)(B)(iii), as calculated by the word-counting

   > feature of Microsoft Office 2010.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

   and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   > This brief has been prepared in a proportionally-spaced typeface using

   > Microsoft Word in 14-point Times New Roman.

*/s/ Stephen Douglas Bonney*
Stephen Douglas Bonney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this 8th day of July, 2014, the foregoing Brief of the American Civil Liberties Union and the ACLU Foundation of Kansas as *Amici Curiae* in Support of Appellant was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. I further certify that seven hard copies of the foregoing brief are being sent to the Court via UPS.

*/s/ Stephen Douglas Bonney*
Stephen Douglas Bonney